Joe Sears LEWIS, Jr., Appellant,

v.

UNITED STATES of America, Appellee.

No. 21234.

United States Court of Appeals Ninth Circuit.

Feb. 21, 1967.

Rehearing Denied March 29, 1967.

Gordon G. Waterfall, Tucson, Ariz., for appellant.

William P. Copple, U. S. Atty., Philip Fahringer, JoAnn D. Diamos, Asst. U. S. Attys., Tucson, Ariz., for appellee.

Before JONES, Judge, U. S. Court of Claims, and BARNES and JERTBERG, Circuit Judges.

BARNES, Circuit Judge:

Appellant was convicted by a jury on two counts, one, of robbing a bank of $7,450 (18 U.S.C. § 2113(a)), and two, of robbing a bank using a deadly weapon (18 U.S.C. § 2113(d)). Jurisdiction below existed under 18 U.S.C. § 3231, and exists here. 28 U.S.C. § 1291. Appellant was sentenced to two concurrent ten year terms.

His defense was an alibi: that he had not been near the Arizona Bank, El Conquistador Branch, 3805 Broadway, Tucson, Arizona, on the morning of April 29th, 1965, the date of the robbery. (R. T. 182–3). He produced witnesses to indicate he was elsewhere. However, he was identified by six prosecution witnesses as the perpetrator of the crime; and certain witnesses identified certain clothing found in his possession at the time of his arrest.

Appellant by his alibi inferentially denied robbing the bank on direct examination. He also explained, on direct examination, that his home was in St. Regis, Montana; when and why he came to Arizona from there; and why he had a gun on his person when he was arrested.

On cross-examination, he was asked about three matters: (1) when he returned to St. Regis, Montana (R.T. 186); (2) what car he drove (R.T. 187); and (3) whether he was possessed of money

when he arrived in Montana (he was), how much ($5,500), and where he got it (gambling) (R.T. 188).

■ While the general rule is clear that cross-examination of a defendant or witness should be limited to matters embraced within the direct examination (Chevillard v. United States, 155 F.2d 929 (9th Cir. 1946)), there are problems which arise (a) in defining what the meaning is of "embraced"; and (b) in determining the exceptions to the general rule.

■ One well recognized exception to the general rule

" "* * * is that cross-examination be permitted for the purpose of testing the capacity of the witness to remember, to observe, to recount, and for the purpose of testing the sincerity and truthfulness of the witness. This may be done with respect to subjects not strictly relevant to the testimony given by the witness on direct examination. The extent of the cross-examination is a matter within the discretion of the trial court. United States v. Bender, 7 Cir., 218 F.2d 869; United States v. Manton, 2d Cir., 107 F.2d 834. "The extent to which cross-examination upon collateral matters shall go is a matter peculiarly within the discretion of the trial judge. And his action will not be interfered with unless there has been upon his part a plain abuse of discretion." United States v. Manton, supra, at page 845. * * *' " Young Ah Chor v. Dulles, 270 F.2d 338 at 342 (9th Cir. 1959).

The denial of the robbery by claim of alibi raised the question as to appellant's reliability, truthfulness, credibility and memory. Was there an abuse of discretion in the trial court permitting the very limited cross-examination that occurred? United States v. Johnson, 285 F.2d 35, 40 (9th Cir. 1960).

■■ The first two of the three matters inquired about on cross-examination clearly were "embraced" in the direct examination. The third (possession of money) is a different matter. "Appellant's possession of a large sum of money

after the robbery * * * [is] clearly probative of the commission of the crime and thus admissible. Johnston v. United States, 260 F.2d 345, 10th Cir., cert. den. 360 U.S. 935, [80. S.Ct. 1454, 4 L.Ed.2d 1547] * * *." Yates v. United States, 362 F.2d 578, 579 (10th Cir. 1966). Cf. United States v. Jackskion, 102 F.2d 683, 123 A.L.R. 116 (2d Cir. 1939); Carr v. United States, 317 F.2d 409, 411 (9th Cir. 1963).

■ In view of appellant's denial of participation in the crime on direct examination, evidence of there being large sums of cash money in the defendant's possession immediately after the robbery in question was a fact material to his possible guilt. Lyda v. United States, 321 F.2d 788, 790 (9th Cir. 1963).

■ Dixon v. United States, 112 U.S. App.D.C. 366, 303 F.2d 226 (1962), is to the contrary, but we decline to follow it, or to limit cross-examination only to (a) challenging directly the truth of a witness' direct testimony; or (b) his bias and prejudice.

But we are still faced with the question of whether the evidence of the possession of the large sum of money, though material, was improper cross-examination. This is a close question. Enriquez v. United States, 293 F.2d 788, 794 (9th Cir. 1961). We conclude that it was not improper.

In coming to such conclusion, we have considered the fact that "money" was brought into the case on appellant's direct examination. It had to do with appellant's borrowing from the appellant's father $200; appellant obtaining a check in that amount. This was to enable appellant's sister, Jaxie Young, to buy a horse in Flagstaff (Tr. p. 184, l. 6–16), "sell it, and make a little money." Appellant had gambled at Las Vegas "on the way down" (Direct Exam., P. 188, l. 24 to 189, l. 1). Had appellant won $5,500 when he stopped at Las Vegas on the way down, and gone to Flagstaff with his sister to purchase a horse, it would be surprising for him to borrow $200 from his father for the purpose of "making a little money." That this proposed horse purchase and sale was not to be of benefit

to appellant's father was established by appellant's sister's direct examination (Tr. p. 150-1) and cross-examination (Tr. p. 156-7).

■ Thus it can be argued that the amount of money appellant had in his possession when he was in Tucson and when he arrived "home" was "embraced" in the direct examination. At the least, it raises a question for the court, in the exercise of its judicial discretion, to pass upon. In view of all the other evidence in the case, we will not say the introduction of this one fact was prejudicial error.

■ Appellant urges two other points, neither of which are convincing. He first urges error in a remark made by the court using the term "culprit." This was the precise word used by appellant's counsel in his question of a witness with respect to identification, without specifying the time or place. (R.T. pp. 117-118; 124-125.) The trial judge attempted to make the question more specific. A motion for mistrial was denied. We find no error under the circumstances.

■ The last error alleged is that no instruction on alibi was given. The short answer is that none was offered and none requested. Rule 30, Fed.R. Crim.P. Counsel for appellant after all instructions were given, stated he had "nothing further" to offer. R.T. p. 245. If an instruction is desired it should be prepared and requested "at the conclusion of the evidence," and prior to the giving of instructions, and must be requested after instructions are given, and before the issues go to the jury. An exception exists in certain cases where the court, of its own volition, must deliver certain instructions; but this is not such a case. Goldsby v. United States, 160 U.S. 70, 77, 16 S.Ct. 216, 40 L.Ed. 343 (1895), Holm v. United States, 325 F.2d 44 (9th Cir. 1963), United States v. Stirone, 311 F.2d 277 (3rd Cir. 1962), cert. den. 372 U.S. 935, 83 S.Ct. 881, 9 L.Ed.2d 766 (1963), United States v. Tramaglino, 197 F.2d 928 (2d Cir. 1952), cert. den. 344 U.S. 864, 73 S.Ct. 105, 97 L.Ed. 670 (1952).

Affirmed.