UNITED STATES of America,
Appellee,

v.

Theodore Lee HARDING, Appellant.

No. 25371.

United States Court of Appeals,
Ninth Circuit.

Oct. 13, 1970.

---

1. United Steelworkers of America, AFL–CIO.

Brian Michaels (argued), Asst. U. S. Atty., Harry D. Steward, U. S. Atty., San Diego, Cal., for appellee.

Before HAMLEY and KILKENNY, Circuit Judges, and BYRNE, District Judge.*

PER CURIAM:

When Theodore Lee Harding crossed the border from Mexico to the United States at 10:30 a. m., on July 15, 1969, a customs inspector at the Port of Entry found five Mexican aliens inside the trunk of Harding's Chrysler Imperial. As a result of this incident, a federal grand jury returned a nine-count indictment against Harding.

In counts one, two and three, he was charged with inducing the illegal entry of three of these aliens (one named in each count), in violation of 8 U.S.C. § 1324(a) (4). In counts four, five and six, Harding was charged with illegally bringing these aliens into the United States, in violation of 8 U.S.C. § 1324(a) (1). In counts seven, eight and nine, he was charged with transporting the three aliens in the United States, in violation of 8 U.S.C. § 1324(a) (2). After a jury trial, Harding was acquitted on counts one, two and three, and convicted on the remaining six counts. This appeal followed.

Harding first argues that the jury verdict is not supported by sufficient evidence.

Since Harding had the aliens in the trunk of his car at the Port of Entry, the only question is whether he then knew they were concealed in his car. If so, the jury could find that he had the requisite intent to violate 8 U.S.C. § 1324(a) (1) and (2). Our examination of the record convinces us that the evidence tending to show knowledge on the part of Harding, although circumstantial, is sufficient to support the verdict.

Harding contends that the trial court erred in permitting the Govern-

Robert V. Schucker (argued), San Diego, Cal., for appellant.

---

* The Honorable William M. Byrne, Senior United States District Judge for the Central District of California, sitting by designation.

ment to cross-examine him with regard to the rummored alien smuggling activities of one Bradley Cathey. The sum total of that cross-examination was to the effect that Harding suspected that Cathey was responsible for putting the aliens in the trunk of Harding's car. Harding asserts that this cross-examination should have been stopped because (1) it exceeded the scope of the direct examination, (2) it was an attempt to impeach him upon a collateral issue, and (3) it was irrelevant to any issue in the case.

In our opinion, the cross-examination was appropriate. In his direct examination, Harding denied having any knowledge as to how the aliens got into the trunk of his automobile. But the Government knew that he had previously told Agent Webb that Cathey was responsible. Accordingly, on cross-examination, the Government laid a foundation to impeach his trial testimony that he had no idea how the aliens got in his car. The cross-examination was effective in this regard. So viewed, the cross-examination was within the scope of the direct examination, it was relevant and the resulting impeachment was not upon a collateral issue. The trial court did not abuse its discretion in permitting the cross-examination in question. *See* Glasser v. United States, 315 U.S. 60, 82–83, 62 S.Ct. 457, 86 L.Ed. 680 (1942); Lewis v. United States, 373 F.2d 576, 578 (9th Cir. 1967).

 Harding contends that the United States Attorney was guilty of prejudicial misconduct in calling witness Cathey to the witness stand knowing that he would invoke his privilege against self-incrimination.

When Cathey took the witness stand he was asked the nature of his occupation. He claimed the privilege, the jury left the court room and, after some colloquy, Cathey was excused. Harding made no objection to the calling of Cathey as a witness and requested no instruction to cure any possible prejudicial effect of the incident. No reference was made during argument to the jury concerning Cathey's refusal to testify.

We hold that, if there was any impropriety on the part of the Government in calling Cathey as a witness, Harding was in no way prejudiced.

Contrary to Harding's contention, we hold that he was not denied a fair trial by reason of the manner in which the trial court participated in the examination of witnesses.

We find no merit in Harding's remaining assertions of error.

Affirmed.