**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

**No. 95-20334**
_____


**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

**versus**

**JUAN MORENO; RICHARD HUGLY,**

**Defendants-Appellants.**

_____

Appeal from the United States District Court
for the Southern District of Texas
(CR-H-93-172-2)
_____

June 27, 1996

Before JONES, SMITH and STEWART, Circuit Judges.

PER CURIAM:[*]

Appellants Richard Hugly and Juan Moreno were convicted of conspiring to traffic in and of possessing cocaine. The district court sentenced them, <u>inter alia</u>, to life in prison. They now appeal their convictions and sentences. Finding no error, we affirm.

---

[*] Pursuant to Local Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Local Rule 47.5.4.

Hugly and Moreno were found guilty of conspiring to distribute a large quantity of cocaine. Hugly was the leader of the conspiracy. He negotiated the cocaine sales and directed the pricing, movement, storage, and delivery of the cocaine. Moreno was his second-in-command. He was responsible for assisting Hugly in negotiating sales, for counting the proceeds, for diluting and measuring cocaine, and for delivering it. The conspiracy included other members who guarded, transported, and delivered cocaine.

Hugly and Moreno were caught as part of an undercover "sting" in which one of their associates, Christopher Nagar, agreed to cooperate with the Drug Enforcement Administration. The DEA devised a two-part plan in which Nagar would purchase up to 20 kilograms of cocaine from Hugly's and Moreno's operation. In May 1992, Nagar purchased a one kilogram "sample" of cocaine from them. Subsequently, Nagar negotiated the purchase of 15-20 more kilograms of cocaine from Hugly and Moreno, although he was unable to complete this transaction.

Hugly and Moreno were indicted and convicted of conspiring to possess with the intent to distribute in excess of 5 kilograms of cocaine, in violation of 21 U.S.C. §§ 841 and 846, and of aiding and abetting each other in possessing with intent to distribute over 500 grams of cocaine, in violation of 18 U.S.C. § 2 and 21 U.S.C. § 841. The district court sentenced them each to life in prison, a $50,000 fine, and 5 years' supervised release.

Hugly and Moreno timely appealed their convictions and sentences.

**A.    Hugly**

Hugly argues on appeal that his convictions are barred by double jeopardy; the evidence was insufficient to support his convictions; the district court erred in not giving a multiple conspiracy instruction to the jury; and the district court erred in sentencing him.

First, Hugly argues that his convictions are barred by the double jeopardy clause of the Fifth Amendment because prior to his trial, the government had secured four summary forfeitures totaling $48,000 taken from his apartment, bank accounts, and person.  Like this court, the Supreme Court has rejected this argument.  United States v. Ursery, ___ U.S. ___, ___ S.Ct. ___, 1996 WL 340815 (1996).  See also United States v. Arreola-Ramos, 60 F.3d 188 (5th Cir. 1995).

Second, Hugly contends the evidence was insufficient to support his convictions for conspiracy and possession.  Hugly did not, though, renew his motion for acquittal at the close of all the evidence.  Thus, we review his convictions only for a manifest miscarriage of justice.  United States v. Inocencio, 40 F.3d 716, 724 (5th Cir. 1994).

No manifest miscarriage of justice occurred in Hugly's conviction for conspiracy; the evidence showed he was not merely

3

associated with Moreno, but also conspired with him.  See United States v. Rodriquez-Mireles, 896 F.2d 890, 892 (5th Cir. 1990) (setting forth elements of conspiracy).  The government introduced wiretapped telephone calls in which Nagar negotiated the purchase of one kilogram, and later of 15-20 kilograms, of cocaine with both Hugly and Moreno.  Nagar also testified that he met both Hugly and Moreno at Hugly's apartment in buying the one kilogram of cocaine.  There, Hugly instructed Moreno to take Nagar to the organization's "stash house" to complete the transaction.  Further, Frederick Washington, the guard at the stash house, testified that Hugly was the leader of the conspiracy and that Moreno was his second-in-command.  Michael Verizzi also testified that he had bought cocaine from Hugly and Moreno on several occasions.  Thus, Hugly's conviction for conspiracy was not manifestly unjust.

Similarly, the conviction for cocaine possession does not rise to the level of manifest injustice.  See United States v. Polk, 56 F.3d 613, 619-20 (5th Cir. 1995) (setting forth elements of possession).  That conviction follows from his conspiracy conviction.  Given that the jury reasonably convicted Hugly of conspiring to distribute cocaine, it is not unjust for him to be convicted of constructively possessing the cocaine distributed by the conspiracy.  See United States v. Quiroz-Hernandez, 48 F.3d 858, 865 (5th Cir. 1995).

Third, Hugly argues that the district court erred in not giving a multiple conspiracy instruction to the jury; Hugly

4

contends that if he did participate in a conspiracy, it was a different one from that charged in the indictment. Hugly, though, did not request such an instruction at trial. Therefore, we review his argument for plain error. United States v. Alford, 999 F.2d 818, 824 (5th Cir. 1993); Fed. R. Crim. Pro. 52(b). That standard is not met. See United States v. Richerson, 833 F.2d 1147, 1155-56 (5th Cir. 1987) (failure to give multiple conspiracy instruction generally does not constitute plain error). Initially, Hugly has not shown there is an evidentiary basis to support a multiple conspiracy charge. He has not identified the evidence he claims shows that he and Moreno were involved in a different conspiracy than the one charged. Also, we reject Hugly's argument because it is merely a reiteration of his sufficiency-of-the-evidence claim. As discussed above, it is not manifestly unjust to infer that Hugly had engaged in one common criminal enterprise with Moreno to distribute cocaine.

Fourth, Hugly argues that the district court clearly erred in finding he was responsible for leading a conspiracy that handled over 200 kilograms of cocaine, and thus erred in sentencing him to a base offense level of 38. We disagree. At trial, Washington testified that he had transported cocaine many times for the conspiracy and, on one occasion, had transported 100-200 kilograms of cocaine. Also, Nagar testified that he had negotiated the purchase of 15-20 kilograms of cocaine from the conspiracy. In addition to these amounts, the government's pre-sentencing

5

investigation documented that the conspiracy distributed 226 more kilograms of cocaine. Therefore, the district court's finding that the conspiracy had distributed over 200 kilograms of cocaine was not clearly erroneous.

Hugly's arguments to the contrary are unpersuasive. Washington's uncertainty about the precise amount of cocaine transported does not make the district court's finding clearly erroneous. The district court found that Washington's testimony was credible, that his uncertainty was understandable given the scope of his activities for the conspiracy, and that the other evidence corroborated his testimony. Also, we reject Hugly's argument that the district court applied an incorrect evidentiary standard in finding the conspiracy distributed over 200 kilograms. While the court did use the phrase "reasonable probability" in one sentence, the court subsequently found that "the evidence was beyond a reasonable doubt that this enterprise engaged in multiple hundred kilos of cocaine during the course of its life" (emphasis added).

Fifth, Hugly argues that the district court clearly erred in finding he led an organization of five or more members, and thus erred in increasing his sentence by four base levels under U.S.S.G. § 3B1.1(a). Hugly contends he led a conspiracy of only three persons -- himself, Moreno, and Washington -- and that his other associates were merely independent contractors. Shielded by the clear error standard, the court's finding to the contrary is

6

correct. The evidence could readily be interpreted as proving that others such as Verizzi, Steve Simon, and Paul Nell were wholesalers for Hugly, and that Walton was his associate.

Sixth, Hugly argues the district court clearly erred in finding that the thirteen firearms found at the stash house were connected to the conspiracy, and thus erred in increasing his sentence by two levels under U.S.S.G. § 2D1.1(b)(1). We disagree. That section's commentary states that the court should enhance a sentence for weapons possession "unless it is clearly improbable that the weapon was connected to the offense." U.S.S.G. § 2D1.1, Comment n.3. Hugly does not dispute that thirteen weapons, including an UZI and three automatic rifles, were found at the stash house. It is not clearly improbable they were there to protect the cocaine. The district court's sentencing enhancement was thus appropriate.

Seventh, Hugly argues that the district court abused its discretion in not conducting an evidentiary hearing before finding that he had obstructed justice and increasing his sentence by two levels under U.S.S.G. § 3C1.1. Under the guidelines, the conduct of a hearing is discretionary. <u>United States v. Pologruto</u>, 914 F.2d 67, 68-69 (5th Cir. 1990); U.S.S.G. § 6A1.3 At trial, Washington testified that Hugly offered him $30,000 to change his testimony, and Nagar testified that Hugly attempted to intimidate him into changing his testimony. At the sentencing hearing, the district court allowed Hugly to file a sworn affidavit denying that

7

he had committed those actions.  Accordingly, the district court did give Hugly the opportunity to present all relevant information regarding his sentence.  The district court thus did not abuse its discretion in determining that a hearing was not necessary.

### B.    Moreno

Moreno first argues that the district court plainly erred in failing to order a mistrial because some jurors inadvertently saw him and Hugly in the custody of the U.S. marshals wearing handcuffs.  The district court determined, however, that Moreno had suffered no prejudice from the incident.  The court also told the jury that it could not infer "any suggestion of guilt" from seeing the defendants-appellants in custody.  Thus, the incident did not rise to the level of plain error.  See Wright v. State of Texas, 533 F.2d 185, 188 (5th Cir. 1976).

Moreno contends incorrectly that the court's instruction was untimely.  Moreno's trial lasted only two days, and the jury received the instruction the morning after the incident.  This minimal delay could not have prejudiced Moreno.  Additionally, Moreno's arguments that the situation was incurable and that the jury disregarded the court's instruction are contrary to this circuit's decisions.  The Fifth Circuit has held that a juror's inadvertent observation of a defendant being transported in shackles is not inherently prejudicial, United States v. Escobar,

674 F.2d 469, 479-80 (5th Cir. 1982), or incurable, Wright, 533 F.2d at 187-88.

Second, Moreno contends that the district court erred in finding, for sentencing purposes, that he was involved in distributing over 200 kilograms of cocaine. See U.S.S.G. § 1B1.3(a). Moreno asserts that he did not know Hugly was distributing over 200 kilograms of cocaine, that he could not have reasonably foreseen the conspiracy would be distributing such a large amount, and that he should only be sentenced based on the 5 kilograms of cocaine he actually delivered. We disagree. The evidence at trial showed that Moreno was Hugly's second-in-command and was responsible for assisting him in negotiating sales, for counting money, for diluting and measuring cocaine, and for making deliveries. Moreno also was knowledgeable about the cocaine shipments received by Hugly and their quantities, and was often present when Hugly negotiated sales at his apartment. Given Moreno's relationship with Hugly, the district court did not err in finding that Moreno knew or could have reasonably foreseen that the conspiracy was distributing over 200 kilograms of cocaine.

Moreno additionally lists as a third appellate issue his belief that the court improperly increased his base sentencing level for his role in the offense. Because he did not brief this issue, it was waived.

For the foregoing reasons, the convictions and sentences of Hugly and Moreno are **AFFIRMED**.